# EXHIBIT B:
# PROPOSED FIRST AMENDED COMPLAINT (REDLINED VERSION)

**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Benjamin S. Levine (SBN 342060)
blevine@galipolaw.com
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333
Fax: (818) 347-4118

**LESSEM, NEWSTAT & TOOSON, LLP**
Jeremy I. Lessem (SBN 213406)
jeremy@lnlegal.com
3450 Cahuenga Blvd., Unit 102
Los Angeles, CA 90068
Tel: (818) 582-3087
Fax: (818) 484-3087

Attorneys for Plaintiffs Masoumeh Motevalli Alamouti

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MASOUMEH MOTEVALLI ALAMOUTI, individually and as successor-in-interest to Masoud Rahmati, deceased; and MOSHEN RAHMATI, individually,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF LOS ANGELES; YVONNE PULLEN; RYAN GARCIA; BRISEIDA NOCHEZ; RENE AGUILAR ORNELAS; JOEL LEYVA; ANDREW WISE; JASON GONZALEZ; BART MARSHALL; MICHAEL MAYBEE; and OLUWASANMI OGUNJUMO and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:24-cv-05560-MWC-JC<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES**<br><br>1. Fourteenth Amendment – Failure to Protect (42 U.S.C. § 1983)<br>2. Fourteenth Amendment – Denial of Medical Care (42 U.S.C. § 1983)<br>3. First/Fourteenth Amendment – Interference with Familial Relations (42 U.S.C. § 1983)<br>4. Municipal Liability – Failure to Train (42 U.S.C. § 1983)<br>5. Municipal Liability – Unconstitutional Custom, Policy, or Practice (42 U.S.C. § 1983)<br>6. Americans With Disabilities Act (42 U.S.C. § 12132)<br>7. Negligence – Wrongful Death and Survival<br>8. Failure to Summon Medical Care (Cal. Gov. Code § 845.6)<br>9. Bane Act (Cal. Civ. Code § 52.1)<br><br>**DEMAND FOR JURY TRIAL** |

**COMPLAINT FOR DAMAGES**

COMES NOW, Plaintiffs MASOUMEH MOTEVALLI ALAMOUTI, individually and as successor in interest to Masoud Rahmati, deceased; and MOSHEN RAHMATI, individually, for their Complaint against Defendants, County of Los Angeles COUNTY OF LOS ANGELES (including its Los Angeles Sheriff's Department and its Men's Central Jail); YVONNE PULLEN; RYAN GARCIA; BRISEIDA NOCHEZ; RENE AGUILAR ORNELAS; JOEL LEYVA; ANDREW WISE; JASON GONZALEZ; BART MARSHALL; MICHAEL MAYBEE; and OLUWASANMI OGUNJUMO and DOES 1-10, hereby alleges as follows:

**INTRODUCTION**

1.      This civil rights action arises out of the June 13, 2023, failure to protect Decedent Masoud Rahmati by Defendants COUNTY OF LOS ANGELES, YVONNE PULLEN, RYAN GARCIA, BRISEIDA NOCHEZ, RENE AGUILAR ORNELAS, JOEL LEYVA, ANDREW WISE, JASON GONZALEZ, BART MARSHALL, MICHAEL MAYBEE, and OLUWASANMI OGUNJUMO and DOES 1-10, inclusive, when they knowingly allowed Mr. Rahmati to be fatally beaten by other inmates, and out of these defendants' failure to provide any medical care to Mr. Rahmati for approximately three and a half hours following the beating, during which time Mr. Rahmati was critically injured and in extreme pain. Plaintiffs seek compensatory damages, punitive damages, attorney's fees, and costs from Defendants for violating various rights guaranteed to Mr. Rahmati and Plaintiffs by the United States Constitution, the California Constitution, and other California law.

**JURISDICTION AND VENUE**

2.      This Court has original jurisdiction pursuant to 28 U.S.C. §1331 and 1343(a)(3)-(4) because Plaintiffs assert claims arising under the laws of the United States, including 42 U.S.C. § 1983 and the First and Fourteenth Amendments of the United States Constitution.  This Court has supplemental jurisdiction over Plaintiff

MASOUMEH MOTEVALLI ALAMOUTI's claims arising under state law pursuant to 28 U.S.C. §1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

3.     Venue is proper in this Court because all incidents, events, and occurrences giving rise to this action occurred in the County of Los Angeles, California.

4.     The survival claims in this action are joined with the individual wrongful death claims pursuant to CCP § 377.62, as all claims arise out of the same wrongful acts or neglect.

5.     Plaintiffs filed timely claims under Government Code Section 911.2 et al., and bring pendant actions under state law. Plaintiffs' claims were rejected by operation of law on January 22, 2024.

## **PARTIES**

6.     At all relevant times, Masoud Rahmati ("Mr. Rahmati") was a 50-year-old man residing in the County of Los Angeles.

7.     MASOUMEH MOTEVALLI ALAMOUTI is an individual residing in Iran and was at all relevant times the natural mother of Mr. Rahmati.  MASOUMEH MOTEVALLI ALAMOUTI sues in her individual capacity as the mother of Mr. Rahmati and also as Mr. Rahmati's successor-in-interest.  MASOUMEH MOTEVALLI ALAMOUTI seeks both survival and wrongful death damages under federal and state law, as well as punitive damages against the individual defendants.

8.     MOSHEN RAHMATI is an individual residing in Los Angeles, California, and was at all relevant times the natural brother of Mr. Rahmati.  MOSHEN RAHMATI sues in his individual capacity as the brother of Mr. Rahmati.  MOSHEN RAHMATI seeks wrongful death damages under federal law, as well as punitive damages against the individual defendants.  During the period until Mr. Rahmati's detention, Mr. Rahmati cohabitated with MOSHEN RAHMATI at MOSHEN RAHMATI's home.

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

9.    At all relevant times, Defendant COUNTY OF LOS ANGELES ("COUNTY")
is and was a duly organized public entity, form unknown, existing under the laws of
political subdivision for the State of California with the capacity to be sued.
COUNTY is responsible for the actions, omissions, policies, procedures, practices,
and customs of its various agents and agencies, and employees, including the Los
Angeles County Sheriff's Department ("LASD") and its agents and employees, the
Men's Central Jail ("MCJ") and its agents and employees.  At all relevant times,
Defendant COUNTY was responsible assuring that the actions, omissions, policies,
procedures, practices, and customs of the COUNTY and its employees and agents
complied with the laws of the United States and the State of California.  At all
relevant times, COUNTY was the employer of all named Defendants, including DOE
Defendants.

10.    Defendant YVONNE PULLEN ("PULLEN") is a deputy for the LASD who, at
all relevant times, was working at the MJC as a correctional officer. Defendant
PULLEN was at all relevant times acting under color of law and within the course and
scope of her duties as a deputy for the LASD and the COUNTY. Defendant PULLEN
was acting with complete authority and ratification of her principal, Defendant
COUNTY.

11.    Defendant RYAN GARCIA ("GARCIA") is a deputy for the LASD who, at all
relevant times, was working at the MJC as a correctional officer. Defendant GARCIA
was at all relevant times acting under color of law and within the course and scope of
his duties as a deputy for the LASD and the COUNTY. Defendant GARCIA was
acting with complete authority and ratification of his principal, Defendant COUNTY.

12.    Defendant BRISEIDA NOCHEZ ("NOCHEZ") is a deputy for the LASD who,
at all relevant times, was working at the MJC as a correctional officer. Defendant
NOCHEZ was at all relevant times acting under color of law and within the course
and scope of her duties as a deputy for the LASD and the COUNTY. Defendant

4

NOCHEZ was acting with complete authority and ratification of her principal, Defendant COUNTY.

13.    Defendant RENE AGUILAR ORNELAS ("ORNELAS") is a deputy for the LASD who, at all relevant times, was working at the MJC as a correctional officer. Defendant ORNELAS was at all relevant times acting under color of law and within the course and scope of his duties as a deputy for the LASD and the COUNTY. Defendant ORNELAS was acting with complete authority and ratification of his principal, Defendant COUNTY.

14.    Defendant JOEL LEYVA ("LEYVA") is a deputy for the LASD who, at all relevant times, was working at the MJC as a correctional officer. Defendant LEYVA was at all relevant times acting under color of law and within the course and scope of his duties as a deputy for the LASD and the COUNTY. Defendant LEYVA was acting with complete authority and ratification of his principal, Defendant COUNTY.

15.    Defendant ANDREW WISE ("WISE") is a deputy for the LASD who, at all relevant times, was working at the MJC as a correctional officer. Defendant WISE was at all relevant times acting under color of law and within the course and scope of his duties as a deputy for the LASD and the COUNTY. Defendant WISE was acting with complete authority and ratification of his principal, Defendant COUNTY.

16.    Defendant JASON GONZALEZ ("GONZALEZ") is a deputy for the LASD who, at all relevant times, was working at the MJC as a correctional officer. Defendant GONZALEZ was at all relevant times acting under color of law and within the course and scope of his duties as a deputy for the LASD and the COUNTY. Defendant GONZALEZ was acting with complete authority and ratification of his principal, Defendant COUNTY.

17.    Defendant BART MARSHALL ("MARSHALL") is a deputy for the LASD who, at all relevant times, was working at the MJC as a correctional officer/supervisor. Defendant MARSHALL was at all relevant times acting under

5

1  color of law and within the course and scope of his duties as a deputy for the LASD

2  and the COUNTY. Defendant MARSHALL was acting with complete authority and

3  ratification of his principal, Defendant COUNTY.

4  18.    Defendant MICHAEL MAYBEE ("MAYBEE") is a deputy for the LASD who,

5  at all relevant times, was working at the MJC as a correctional officer/supervisor.

6  Defendant MAYBEE was at all relevant times acting under color of law and within

7  the course and scope of his duties as a deputy for the LASD and the COUNTY.

8  Defendant MAYBEE was acting with complete authority and ratification of his

9  principal, Defendant COUNTY.

10  9. 19.   Defendant OLUWASANMI OGUNJUMO ("OGUNJUMO") is a deputy for the

11  LASD who, at all relevant times, was working at the MJC as a correctional

12  officer/supervisor. Defendant OGUNJUMO was at all relevant times acting under

13  color of law and within the course and scope of his duties as a deputy for the LASD

14  and the COUNTY. Defendant OGUNJUMO was acting with complete authority and

15  ratification of his principal, Defendant COUNTY.

16  10.    Defendants DOES 1-10 are deputies and correctional officers for the COUNTY,

17  including at MCJ, including those employed as nurses and other medical

18  professionals, as well as officers responsible for identifying medical and mental health

19  issues and providing medical attention, medical screening, and medical care to

20  inmates and detainees. DOES 1-10 include such officials working on behalf of

21  COUNTY and hired through, or employed directly by, a third-party contractor. DOES

22  1-10 also include those responsible for transporting inmates and detainees within the

23  facility. DOES 1-10 were at all relevant times acting under color of law within the

24  course and scope of their employment with the LASD/COUNTY. DOES 1-10 were

25  acting with complete authority and ratification of their principal, Defendant COUNTY

26  at all relevant times.

27

1  11.20. Defendants PULLEN, GARCIA, NOCHEZ, ORNELAS, LEYVA, WISE,

2  GONZALEZ, MARSHALL, MAYBEE, and OGUNJUMODOES 1-10 (collectively,

3  the "Deputy Defendants") are sued in their individual capacities.

4  12.21. On information and belief, Defendants PULLEN, GARCIA, NOCHEZ,

5  ORNELAS, LEYVA, WISE, GONZALEZ, MARSHALL, MAYBEE, and

6  OGUNJUMODOES 1-10 were residents of the County of Los Angeles, California.

7  13.22. In doing the acts and failing and omitting to act as hereinafter described,

8  Defendants PULLEN, GARCIA, NOCHEZ, ORNELAS, LEYVA, WISE,

9  GONZALEZ, MARSHALL, MAYBEE, and OGUNJUMODOES 1-10, were acting

10  on the implied and actual permission and consent of Defendant COUNTY, and LASD

11  and the MCJ.

12  14.    The true names and capacities of DOES 1-10 are unknown to Plaintiffs, who

13  otherwise sue these Defendants by such fictitious names. Plaintiffs will seek to

14  amend this Complaint to completely identify these Defendants when their true names

15  and capacities have been ascertained.

16  15.23. All of the acts complained of herein by Plaintiffs against Defendants were done

17  and performed by said Defendants by and through their authorized agents, servants,

18  and/or employees, all of whom at all relevant times herein were acting within the

19  course, purpose, and scope of said agency, service, and/or employment capacity.

20  Moreover, Defendants and their agents ratified all of the acts complained of herein.

21  16.24. On December 7, 2023, Plaintiffs filed comprehensive and timely claims for

22  damages with the County of Los Angeles pursuant to applicable sections of the

23  California Government Code. The claims were rejected by operation of law on

24  January 22, 2024.

25

26

27

## **FACTS COMMON TO ALL CLAIMS FOR RELIEF**

17.25. Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

18.26. In early June of 2023, Mr. Rahmati resided in Men's Central Jail ("MCJ"). On information and belief, Mr. Rahmati was a pretrial detainee at MCJ and had not been tried or convicted for the alleged crime of arrest that precipitated his detention.

19.27. On information and belief, Mr. Rahmati was housed on the Fifth Floor of MCJ, which is, or at that time was, reserved for mentally ill inmates and detainees. Mr. Rahmati suffered from one or more serious mental illnesses.

20.28. On information and belief, Defendants were at all relevant times aware that all inmates and detainees on the Fifth Floor suffered from mental illnesses, including severe mental illnesses.

21.29. On or around the morning of June 13, 2023, Mr. Rahmati was in the bathroom adjacent to the bunk room of his assigned housing unit, when approximately three other inmates approached him and forced him toward the shower area. Once Mr. Rahmati was near the showers, these inmates began to beat Mr. Rahmati in the face and torso, including with their fists, causing Mr. Rahmati to fall to the ground. Once Mr. Rahmati fell, these inmates continued to beat and kick him in the face, torso, arms, and legs, causing him life-threatening injuries and extreme pain. On information and belief, this beating occurred over the course of at least several minutes.

22.30. Following this beating, these inmates exited the bathroom area, leaving Mr. Rahmati on the floor near the showers, beaten, critically injured, and in extreme pain. Mr. Rahmati remained on the floor in this condition, unattended to by anyone, including DOES 1-10the Deputy Defendants, for approximately an hour and a half after the beating ended.

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

23.31. On information and belief, the entirety of Mr. Rahmati's encounter with the other inmates and of the beating in the bathroom was captured on a surveillance video feed, which was both recorded and viewable in real-time by LASD and MCJ officials, including MARSHALL, MAYBEE, and OGUNJUMODOES 1-10, from one or more control rooms within MCJ.

24.32. On information and belief, one or more of MARSHALL, MAYBEE, OGUNJUMO, and DOES 19-10 observed the beating in real-time via the surveillance video feed while the beating was occurring but took no action whatsoever to stop the other inmates from beating Mr. Rahmati or to otherwise assist Mr. Rahmati, including by providing or summoning medical assistance. Further, on information and belief, one or more of MARSHALL, MAYBEE, and OGUNJUMODOES 1-10 had access to the live video feed showing the beating in real-time, but elected not to observe the live video feed, and/or elected to engage in other tasks instead of observing the live video feed, even though one or more of MARSHALL, MAYBEE, OGUNJUMO, and DOES 19-10 was responsible for observing the live video feed to ensure inmate/detainee safety. Further, on information and belief, one or more of PULLEN, GARCIA, NOCHEZ, ORNELAS, LEYVA, WISE, and GONZALEZDOES 1-10 failed to perform regular checks of the bathroom where the beating occurred or the bunk area to which it was connected, despite having a responsibility to do so.

25.33. Approximately an hour and a half after the beating, other inmates came into the shower area, where Mr. Rahmati was still lying on the floor, critically injured and in extreme pain, and dragged Mr. Rahmati out of the bathroom and into a bed in the bunk area of the housing unit. Mr. Rahmati remained on the bed in this condition, unattended to by anyone, including DOES 1-10the Deputy Defendants for approximately two hours after he was brought into the bed by other inmates.

9

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

26.34. On information and belief, one or more of MARSHALL, MAYBEE, and OGUNJUMODOES 1-10 observed Mr. Rahmati being dragged out of the bathroom by these inmates, beaten and critically injured, in real-time via the surveillance video feed, but took no action whatsoever to stop Mr. Rahmati from being dragged away in this manner or to otherwise assist Mr. Rahmati, including by providing or summoning medical assistance. Also on information and belief, one or more of DOES 1-10the Deputy Defendants failed to adequately monitor the surveillance video feed and/or failed to conduct regular checks on the Fifth Floor.

27.35. On information and belief, despite one or more of MARSHALL, MAYBEE, OGUNJUMO, and DOES 19-10 being aware of the beating while it was occurring and afterward, and despite one or more of the Deputy DefendantsDOES 1-10 being aware of Mr. Rahmati being dragged out of the bathroom into the bunk area in a beaten and critically injured condition, none of DOES 1-10the Deputy Defendants called for medical assistance to Mr. Rahmati, or took any other action to ensure medical assistance was provided to him, during the approximately three and a half hours following the beating. During these approximate three and a half hours, one or more of DOES 1-10the Deputy Defendants failed to adequately monitor the surveillance video feed and/or failed to conduct regular checks on the Fifth Floor.

28.36. Approximately three and a half hours after the beating, and approximately two hours after Mr. Rahmati was dragged out of the bathroom and into a bed, other inmates alerted one or more LASD and/or MCJ officials, including one or more of PULLEN, GARCIA, NOCHEZ, ORNELAS, LEYVA, WISE, and GONZALEZDOES 1-10, that Mr. Rahmati was lying in a bunk bed and was severely injured.

29.37. Shortly aAfter inmates notified these officials of Mr. Rahmati's condition, Mr. Rahmati succumbed to his injuries and died, having received no medical attention for approximately three and a half hours after the beating.

30.38. During the beating and the subsequent approximately three and a half hours thereafter, Mr. Rahmati experienced extreme pain and suffering and emotional distress.

31.39. As alleged above, DOES 1-10the Deputy Defendants failed to take appropriate measures to protect Mr. Rahmati from violence at the hands of other inmates and/or detainees, including by failing to take any action to stop the beating of Mr. Rahmati while it was occurring despite their contemporaneous awareness that it was occurring.

32.40. DOES 1-10The Deputy Defendants also failed to provide sufficient and immediate medical attention to Mr. Rahmati after he was beaten, including during the approximate hour-and-a-half period immediately following the beating, as well as during the subsequent approximate two-hour period after he was dragged out of the bathroom and into a bed. On information and belief, provision of timely medical attention to Mr. Rahmati could have prevented his death.

33.41. Defendants, including COUNTY and DOES 1-10the Deputy Defendants, were negligent in their conduct, including but not limited to COUNTY's management of the MCJ. This negligent management includes, but is not limited to, allowing severe overcrowding conditions to persist in the MCJ and on its Fifth Floor; failing to provide mentally ill inmates and detainees residing on the Fifth Floor with adequate mental health care, or any mental health care treatment, including necessary medication; and failing to appropriately identify inmates and detainees who have a known propensity for violence, including as a result of untreated or inadequately treated mental illnesses, and separate them from other inmates and detainees in order to prevent foreseeable violence against other inmates and detainees. DOES 1-10The Deputy Defendants were further negligently trained with respect to providing mental health care to known mentally ill inmates and detainees, with respect to preventing and stopping violence against inmates and detainees, and with respect to providing or summoning medical care for injured inmates and detainees.

11
FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

34.42. Each of the named and unnamed Defendants were integral participants in the failure to protect Mr. Rahmati, the denial of medical care to Mr. Rahmati, the negligent treatment of Mr. Rahmati, and other violations of Mr. Rahmati's rights, or, alternatively, failed to intervene to prevent these violations, despite each Defendant having a responsibility and realistic opportunity to intervene to prevent these violations.

## FIRST CLAIM FOR RELIEF

### Fourteenth Amendment – Failure to Protect (42 U.S.C. § 1983)

### (By MASOUMEH MOTEVALLI ALAMOUTI Against Defendants PULLEN, GARCIA, NOCHEZ, ORNELAS, LEYVA, WISE, GONZALEZ, MARSHALL, MAYBEE, and OGUNJUMODOES 1-10)

35.43. Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

36.44. The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects pretrial detainees from conditions of confinement or failures to prevent harm that amount to punishment without due process, including where jail or prison officials are deliberately indifferent to known risks of harm to detainees.

37.45. The Deputy Defendants DOES 1-10 intentionally housed Mr. Rahmati with other mentally ill inmates with a known proclivity for violence.

38.46. As alleged above, one or more of the Deputy Defendants DOES 1-10 had actual knowledge of the beating of Mr. Rahmati by other inmates/detainees while it was ongoing. Further, as alleged above, one or more of Defendants MARSHALL, MAYBEE, and OGUNJUMODOES 1-10 were responsible for observing the bathroom area via the live video feed but instead elected not to do so. Further, as alleged above, one or more of Defendants PULLEN, GARCIA, NOCHEZ, ORNELAS, LEYVA, WISE, and GONZALEZDOES 1-10 were responsible for

1  conducting regular in-person checks of the bathroom area but instead elected not to

2  do so.

3  39.47. Despite one or more of DOES 1-10the Deputy Defendants having actual

4  knowledge of the fact that Mr. Rahmati was being severely beaten while the beating

5  was ongoing, these Defendants took no action whatsoever to intervene to stop the

6  beating at any time, including by personally responding to the bathroom where the

7  beating was occurring or by calling for other LASD and/or MCJ staff to respond there

8  and stop the beating. These Defendants were objectively deliberately indifferent to

9  the known risk that Mr. Rahmati would be seriously injured, and would be further

10  injured as the beating progressed, when they took no action to respond or to request a

11  response to the beating while it was ongoing. These actions and omissions on the part

12  of these Defendants were sufficiently harmful to evidence deliberate indifference to

13  Mr. Rahmati's serious risk of harm, and the indifference to Mr. Rahmati's risk of

14  harm as alleged above was substantial.

15  40.48. Further, despite DOES 1-10the Deputy Defendants having a responsibility to

16  monitor the live video feed of the bathroom area and/or conduct regular in-person

17  checks of the bathroom area, one or more of DOES 1-10the Deputy Defendants

18  elected not to perform these duties and to instead engage in other activities. These

19  Defendants were objectively deliberately indifferent to the known risk that

20  inmates/detainees, including Mr. Rahmati, would be attacked in the bathroom area

21  and be seriously injured as a result, but nevertheless elected not to fulfill their

22  responsibilities to observe the bathroom area via video feed and/or through in-person

23  checks.

24  41.49. The Deputy Defendants DOES 1-10 thus made intentional decisions regarding

25  Mr. Rahmati's confinement as alleged above. These conditions put Mr. Rahmati at a

26  substantial risk of suffering serious harm. DOES 1-10The Deputy Defendants did not

27  take reasonable measures to protect Mr. Rahmati from this risk despite obvious

13

consequences of not acting upon the ongoing beating Mr. Rahmati was suffering, and by not taking action to protect Mr. Rahmati from same, ~~DOES 1-10~~the Deputy Defendants caused Mr. Rahmati's injury and death.

~~42.~~50. Mr. Rahmati's risk of harm was serious, in that the failure to respond to the beating of Mr. Rahmati by other inmates/detainees while it was ongoing resulted in Mr. Rahmati's death.

~~43.~~51. Mr. Rahmati was entitled to receive protection from the known risk of harm to his life while in the care and custody of the COUNTY while detained/incarcerated at MCJ. In doing the acts complained of, the Deputy Defendants ~~DOES 1-10~~ failed to protect Mr. Rahmati from a known risk of serious harm in violation of his rights under the Due Process Clause of the Fourteenth Amendment.

~~44.~~52. The Deputy Defendants ~~DOES 1-10~~ knew that failure to protect Mr. Rahmati could result in Mr. Rahmati being seriously injured or killed, but disregarded that serious risk, directly causing Mr. Rahmati great bodily harm and death.

~~45.~~53. Each of the several aforementioned actions and omissions of the Deputy Defendants ~~DOES 1-10~~, along with other undiscovered conduct, shocks the conscience, in that they acted with deliberate indifference to the constitutional rights of Mr. Rahmati. ~~DOES 1-10~~The Deputy Defendants were deliberately indifferent to a substantial risk of serious harm to Mr. Rahmati. The Deputy Defendants' ~~DOES 1-10's~~ conduct served no legitimate penological purpose.

~~46.~~54. The Deputy Defendants ~~DOES 1-10~~ are liable for the failure to protect Mr. Rahmati, and for his injuries and death, either because they were integral participants in the failure to protect, or because they failed to intervene to prevent such violations.

~~47.~~55. As a direct and proximate result of the aforementioned conduct, Mr. Rahmati suffered injuries, including pain and suffering, and then died and lost his earning capacity.

~~48.~~56. The conduct of the Deputy Defendants ~~DOES 1-10~~ was willful, wanton,

14

1  malicious, and done with a reckless disregard for the rights and safety of Mr.

2  Rahmati, and therefore warrants the imposition of exemplary and punitive damages

3  as to these Defendants.

4  49.57. Plaintiff MASOUMEH MOTEVALLI ALAMOUTI brings this claim as

5  successor-in-interest to Mr. Rahmati and seeks survival damages under this claim.

6  Plaintiff seeks damages, including for Mr. Rahmati's pain and suffering, loss of life,

7  loss of earning capacity, and loss of enjoyment of life. Plaintiff also seeks reasonable

8  costs and attorney's fees under 42 U.S.C § 1988 on this claim.

9  **SECOND CLAIM FOR RELIEF**

10  **Fourteenth Amendment – Denial of Medical Care (42 U.S.C. § 1983)**

11  **(By MASOUMEH MOTEVALLI ALAMOUTI Against Defendants PULLEN,**

12  **GARCIA, NOCHEZ, ORNELAS, LEYVA, WISE, GONZALEZ, MARSHALL,**

13  **MAYBEE, and OGUNJUMODOES 1-10)**

14  50.58. Plaintiffs repeat and re-allege each and every allegation in the foregoing

15  paragraphs of this Complaint with the same force and effect as if fully set forth

16  herein.

17  51.59. The Due Process Clause of the Fourteenth Amendment to the United States

18  Constitution protects pretrial detainees from conditions of confinement or failures to

19  prevent harm that amount to punishment without due process, including where jail or

20  prison officials are deliberately indifferent to detainees' medical needs.

21  52.60. As alleged above, the Deputy Defendants DOES 1-10 had actual knowledge of

22  the beating of Mr. Rahmati while it was ongoing, and of his urgent need for medical

23  care thereafter, based on their knowledge of the beating and of the likelihood that Mr.

24  Rahmati had suffered serious injuries as a result.

25  53.61. Despite the Deputy Defendants DOES 1-10 having actual knowledge of Mr.

26  Rahmati's serious injuries and his urgent need for medical care throughout the

27  approximately three and a half hours following the beating, the Deputy

15

1   Defendants~~DOES 1-10~~ took no action whatsoever to provide medical care, or to

2   secure the provision of medical care, to Mr. Rahmati during that time. This

3   demonstrates deliberate indifference.

4   ~~54.~~62. Moreover, despite the Deputy Defendants'~~ DOES 1-10's~~ awareness of the fact

5   that Mr. Rahmati had been beaten and of his condition following the beating, ~~DOES~~

6   ~~1-10~~ the Deputy Defendants allowed Mr. Rahmati to remain, unaided, on the

7   bathroom floor for approximately an hour and a half, and further allowed him to be

8   dragged out of the bathroom and into the bunk area by other inmates/detainees,

9   despite the potential for this to exacerbate Mr. Rahmati's injuries, further

10  demonstrating deliberate indifference.

11  ~~55.~~63. The Deputy Defendants~~ DOES 1-10~~ were objectively indifferent to Mr.

12  Rahmati's serious medical needs when they failed to ensure that prompt and adequate

13  medical attention was provided to him upon being beaten as described herein. These

14  actions and omissions on the part of these Defendants were sufficiently harmful to

15  evidence deliberate indifference to Mr. Rahmati's serious and immediate medical

16  needs, and the indifference to Mr. Rahmati's medical needs as alleged above was

17  substantial.

18  ~~56.~~64. The Deputy Defendants~~ DOES 1-10~~ thus made intentional decisions regarding

19  Mr. Rahmati's confinement as alleged above. These conditions put Mr. Rahmati at a

20  substantial risk of suffering serious harm. ~~DOES 1-10~~The Deputy Defendants did not

21  take reasonable measures to abate this risk despite obvious consequences of not

22  treating Mr. Rahmati's injuries, and by not treating Mr. Rahmati's injuries, ~~DOES 1-~~

23  ~~10~~the Deputy Defendants caused Mr. Rahmati exacerbation of his injuries, further

24  injury, extreme pain and suffering, and death.

25  ~~57.~~65. Mr. Rahmati's medical need was serious, in that the failure to treat Mr.

26  Rahmati's injuries resulted in Mr. Rahmati's death. His need was obvious, in that he

27  was visibly beaten by other inmates/detainees.

58.66. Mr. Rahmati was entitled to receive necessary medical attention while in the care and custody of the COUNTY while detained/incarcerated at MCJ.  In doing the acts complained of, the Deputy Defendants DOES 1-10 deprived Mr. Rahmati of urgently needed medical care in violation of his rights under the Due Process Clause of the Fourteenth Amendment.

59.67. The Deputy Defendants DOES 1-10 knew that failure to provide timely medical treatment to Mr. Rahmati could result in Mr. Rahmati suffering further injury or dying, but disregarded that serious medical need, directly causing Mr. Rahmati great bodily harm, pain and suffering, and death.

60.68. Each of the several aforementioned actions and omissions of the Deputy Defendants DOES 1-10 along with other undiscovered conduct, shocks the conscience, in that they acted with deliberate indifference to the constitutional rights of Mr. Rahmati. DOES 1-10 The Deputy Defendants were deliberately indifferent to a substantial risk of serious harm to or serious medical needs of Mr. Rahmati. The Deputy Defendants' DOES 1-10's conduct served no legitimate penological purpose.

61.69. The Deputy Defendants DOES 1-10 are liable for the denial of medical care to Mr. Rahmati, and for his injuries and death, either because they were integral participants in the denial of medical care, or because they failed to intervene to prevent these violations.

62.70. As a direct and proximate result of the aforementioned conduct, Mr. Rahmati suffered injuries, including pain and suffering, and then died and lost his earning capacity.

63.71. The conduct of the Deputy Defendants DOES 1-10 was willful, wanton, malicious, and done with a reckless disregard for the rights and safety of Mr. Rahmati, and therefore warrants the imposition of exemplary and punitive damages as to these Defendants.

64.72. Plaintiff MASOUMEH MOTEVALLI ALAMOUTI brings this claim as

successor-in-interest to Mr. Rahmati and seeks survival damages under this claim. Plaintiff seeks damages, including for Mr. Rahmati's pain and suffering, loss of life, loss of earning capacity, and loss of enjoyment of life. Plaintiff also seeks reasonable costs and attorney's fees under 42 U.S.C § 1988 on this claim.

**THIRD CLAIM FOR RELIEF**

**First/Fourteenth Amendment – Substantive Due Process, Interference with Familial Relations and Association (42 U.S.C. § 1983)**

**(By All Plaintiffs Against Defendants PULLEN, GARCIA, NOCHEZ, ORNELAS, LEYVA, WISE, GONZALEZ, MARSHALL, MAYBEE, and OGUNJUMO DOES 1-10)**

65.73. Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

66.74. Plaintiffs have a cognizable interest under the Due Process Clause of the Fourteenth Amendment to the United States Constitution to be free from state actions that deprive her them of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in their familial relationship with their son and brother, Mr. Rahmati.  Plaintiffs also have a cognizable interest under the First Amendment to the United States Constitution to be free from state actions that unreasonably interfere with their familial relationship and association with their son and brother, Mr. Rahmati.

67.75. As alleged above, the Deputy Defendants DOES 1-10 had actual knowledge of the fact of the beating of Mr. Rahmati while was ongoing, yet failed to take necessary steps to protect Mr. Rahmati from harm, including by personally intervening in the ongoing beating of Mr. Rahmati by other inmates/detainees or by summoning other LASD or MCJ officials to intervene to stop the beating.

68.76. As alleged above, the Deputy Defendants DOES 1-10 also had actual

18

knowledge of the fact that Mr. Rahmati had been beaten after the beating had ended, as well as of his resulting serious injuries and urgent need for medical care, yet failed to take necessary steps to ensure Mr. Rahmati received necessary medical care, including by personally responding to provide medical care or by summoning medical professionals to provide urgently needed treatment.

69.77. These actions of the Deputy Defendants DOES 1-10, along with other undiscovered conduct, shock the conscience, in that the Deputy DefendantsDOES 1-10 acted with deliberate indifference to the constitutional rights of Mr. Rahmati and Plaintiffs.

70.78. The Deputy Defendants DOES 1-10 thus violated the substantive due process rights of Plaintiffs to be free from unwarranted interference with their familial relationships with Mr. Rahmati, their son and brother.

71.79. As a direct and proximate result of the aforementioned conduct, Mr. Rahmati suffered injuries, including pain and suffering, and then died, losing his earning capacity. Also, as a direct and proximate cause of the acts of the Deputy Defendants DOES 1-10, Plaintiffs suffered emotional distress, mental anguish, and pain. Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of Mr. Rahmati, and will continue to be so deprived for the remainder of their natural lives.

72.80. The conduct of the Deputy Defendants DOES 1-10 was willful, wanton, malicious, and done with a reckless disregard for the rights and safety of Mr. Rahmati, and for the rights of Plaintiffs, and therefore warrants the imposition of exemplary and punitive damages as to these Defendants.

73.81. Plaintiffs bring these claims in their individual capacities and seek wrongful death damages under this claim, including for the loss of love, companionship, comfort, support, society, care, and sustenance of Mr. Rahmati. Plaintiffs also seek

---

19

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

reasonable costs, funeral and burial expenses, and attorney's fees under 42 U.S.C § 1988.

## FOURTH CLAIM FOR RELIEF

### Municipal Liability – Failure to Train (42 U.S.C. § 1983)

### (By All Plaintiffs Against Defendant COUNTY)

74.82. Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

75.83. The acts of the Deputy Defendants DOES 1-10 deprived Mr. Rahmati and Plaintiffs of their particular rights under the United States Constitution.

76.84. The Deputy Defendants DOES 1-10 acted under color of law.

77.85. On information and belief, Defendants COUNTY failed to properly and adequately train the Deputy Defendants DOES 1-10 on subject matters COUNTY knew the Deputy Defendants DOES 1-10 were virtually certain to have to address in the course of their work for COUNTY, including but not limited to protection of inmates/detainees from violence at the hands of other inmates/detainees and the provision of medical care to injured inmates/detainees.

78.86. The training policies of Defendant COUNTY were not adequate to train its deputies and correctional officers at LASD and the MCJ to handle the usual and recurring situations with which they must deal, including responding to inmate-on-inmate violence and the provision of prompt and adequate medical care. As stated above, while Mr. Rahmati was being beaten by other inmates/detainees, DOES 1-10 the Deputy Defendants did not engage in any type of response, whether by personally intervening to stop the beating or otherwise, and DOES 1-10 the Deputy Defendants also did not attempt to provide or summon medical care for Mr. Rahmati after he had been beaten and was critically injured. On information and belief, both of these critical omissions are clear violations of the policies of LASD and the MCJ, and

20

1  Defendant COUNTY did not adequately train the Deputy Defendants DOES 1-10
2  with regard to said policies.

3  79.87. Defendant COUNTY was deliberately indifferent to the obvious consequences
4  of its failure to train its officers adequately.

5  80.88. The failure of Defendant COUNTY to provide adequate training caused the
6  deprivation of Plaintiffs' and Mr. Rahmati's rights by the Deputy Defendants DOES
7  1-10; that is, Defendant COUNTY's failure to train is so closely related to the
8  deprivation of Plaintiffs' and Mr. Rahmati's rights as to be the moving force that
9  caused their ultimate injuries.

10  81.89. As a direct and proximate result of the aforementioned conduct, Mr. Rahmati
11  suffered injuries, including pain and suffering, and then died, losing his earning
12  capacity. As a direct and proximate cause of the acts of the Deputy Defendants DOES
13  1-10, Plaintiffs suffered emotional distress, mental anguish, and pain. Plaintiffs have
14  also been deprived of the life-long love, companionship, comfort, support, society,
15  care, and sustenance of Mr. Rahmati, and will continue to be so deprived for the
16  remainder of their natural lives. Accordingly, Defendants are liable to Plaintiffs for
17  compensatory damages under 42 U.S.C. § 1983.

18  82.90. Plaintiff MASOUMEH MOTEVALLI ALAMOUTI brings this claim as
19  successor-in-interest to Mr. Rahmati and seeks survival damages under this claim,
20  including for Mr. Rahmati's pre-death pain and suffering, loss of life, loss of earning
21  capacity, and loss of enjoyment of life. Plaintiffs MASOUMEH MOTEVALLI
22  ALAMOUTI and MOSHEN RAHMATI also bring this claim in their individual
23  capacities and seek wrongful death damages under this claim for Plaintiffs' loss of
24  Mr. Rahmati's love, companionship, guidance, advice, and support. Plaintiffs also
25  seek reasonable costs, funeral and burial expenses, and attorney's fees under 42
26  U.S.C § 1988.

27

# FIFTH CLAIM FOR RELIEF

## Municipal Liability – Unconstitutional Custom, Policy, or Practice

## (42 U.S.C. § 1983)

## (By All Plaintiffs Against Defendant COUNTY)

83.91. Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

84.92. The Deputy Defendants DOES 1-10 acted pursuant to an expressly adopted official policy or a longstanding practice or custom of Defendant COUNTY, including unconstitutional policies of not adequately monitoring video feeds of inmate/detainee areas in order to ensure protection of inmates/detainees from violence and provision of urgently needed medical care; of failing to intervene in fights among and against inmates/detainees and instead to allow fights to continue until victims are severely injured or killed; of delaying or denying provision of medical care to inmates/detainees who are injured by other inmates/detainees; of allowing inmates/detainees to freely enter and exit bathroom areas at night and in early morning hours where they will not be adequately monitored by jail staff and thus are more easily subjected to violence by other inmates/detainees; failing to adequately monitor inmate/detainee bunk areas and bathrooms in order to prevent and intervene in to stop fights or attacks and in order to identify inmates/detainees who have been hurt; and of allowing overcrowding of jails and of bunk areas, including on the Fifth Floor of the MCJ, including by maintaining bunks that are stacked three beds high and are placed shoulder-width apart, enabling increased violence against inmates/detainees and resulting in further inadequate monitoring of inmates/detainees in bunk areas by jail staff.

85.93. On information and belief, the Deputy Defendants DOES 1-10 were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with Mr. Rahmati's death.

86.94. By reason of the aforementioned acts and omissions, Plaintiffs have suffered the loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of Mr. Rahmati. The aforementioned acts and omissions also caused Mr. Rahmati pain and suffering, loss of enjoyment of life, and death.

87.95. Defendant COUNTY, together with various other officials, whether named or unarmed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in paragraphs above. Despite having knowledge as stated above, these Defendants condoned, tolerated and through actions and inactions thereby ratified such policies. Said Defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Mr. Rahmati, Plaintiffs, and other individuals similarly situated.

88.96. Furthermore, the policies, practices, and customs implemented, maintained, and still tolerated by Defendant COUNTY were affirmatively linked to and were a significantly influential force behind the injuries of Mr. Rahmati and Plaintiffs.

89.97. By reason of the aforementioned acts and omissions, Plaintiffs have suffered loss of love, companionship, affection, comfort, care, society, training, guidance, and past and future support from Mr. Rahmati. The aforementioned acts and omissions also caused Mr. Rahmati's pain and suffering, loss of enjoyment of life, and death. Accordingly, Defendant COUNTY is liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

90.98. Plaintiff MASOUMEH MOTEVALLI ALAMOUTI brings this claim as successor-in-interest to Mr. Rahmati and seeks survival damages under this claim,

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

including for Mr. Rahmati's pre-death pain and suffering, loss of life, loss of earning capacity, and loss of enjoyment of life. Plaintiffs MASOUMEH MOTEVALLI ALAMOUTI and MOSHEN RAHMATI also bring this claim in their individual capacities and seek wrongful death damages under this claim for Plaintiffs' loss of Mr. Rahmati's love, companionship, guidance, advice, and support. Plaintiffs also seek reasonable costs, funeral and burial expenses, and attorney's fees under 42 U.S.C § 1988.

## SIXTH CLAIM FOR RELIEF

### Americans with Disabilities Act (42 U.S.C. § 12132)

### (By Plaintiff MASOUMEH MOTEVALLI ALAMOUTI Against All Defendants)

91.99. Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

92.100.    Mr. Rahmati was a "qualified individual" with a mental illness that substantially limited his ability to care for himself and control his mental health condition as defined under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131(2).

93.101.    COUNTY is a covered entity for purposes of enforcement of the ADA as explained by regulations promulgated under that law.

94.102.    Under the ADA, COUNTY is mandated to develop effective procedures for the care of mentally ill individuals in its custody, for interactions with individuals with mental disabilities, and to ensure the protection of these individuals' personal and civil rights.

95.103.    In enacting the ADA, Congress found that individuals with disabilities have been isolated and segregated, constituting a form of discrimination that is a pervasive social problem. 42 U.S.C. § 12101(a)(2).

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

96.104.    COUNTY is mandated under the ADA not to discriminate against any qualified individual on the basis of disability in any services or facilities. 42 U.S.C. § 12182(a).

97.105.    COUNTY and DOES 1-10the Deputy Defendants violated the ADA by: (1) COUNTY failing to properly train its employees, including DOES 1-10the Deputy Defendants and other LASD/MCJ staff, to respond with appropriate care to individuals with mental health impairments in its custody, including by providing protection to them from known risks of harm and by providing medical care they are known to need; and (2) DOES 1-10the Deputy Defendants failing to follow procedures for intervention to prevent or stop attacks on mentally ill inmates/detainees who are especially vulnerable to harm or for the provision of medical care to mentally ill inmates/detainees who have been injured, including at the hands of other inmates/detainees.

98.106.    As a direct and proximate result of Defendants' acts and omissions as alleged above, Mr. Rahmati was caused to suffer severe pain and suffering and ultimately died. Also, as a direct and proximate result of Defendants' conduct as alleged above, Plaintiff has suffered emotional distress and mental anguish. Plaintiff also has been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of Mr. Rahmati, and will continue to be so deprived for the remainder of her natural life.

99.107.    Plaintiff brings this claim as successor-in-interest to Mr. Rahmati and in her individual capacity and seeks survival and wrongful death damages under this claim, including for Mr. Rahmati's pain and suffering, loss of life, loss of earning capacity, and loss of enjoyment of life, as well as for Plaintiff's loss of Mr. Rahmati's love, companionship, guidance, advice, and support. Plaintiff also seeks reasonable attorney's fees and costs under this claim.

## **SEVENTH CLAIM FOR RELIEF**

### **Negligence – Wrongful Death and Survival**

**(By Plaintiff MASOUMEH MOTEVALLI ALAMOUTI Against All Defendants)**

100.108.    Plaintiff repeats and re-alleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

101.109.    The Deputy Defendants DOES 1-10 were charged with a duty to use reasonable care to prevent harm or injury to others. This duty includes taking reasonable measures to prevent attacks on inmates/detainees in their custody, intervening to stop attacks on inmates/detainees in their custody, providing prompt and adequate medical care to injured inmates/detainees in their custody, identifying and handling medical issues, and otherwise protecting inmates/detainees from reasonably foreseeable harm.

102.110.    Defendants COUNTY was charged with a duty to ensure the safety of inmates/detainees in its detention facilities, including MCJ. This duty includes training and requiring correctional staff, including DOES 1-10the Deputy Defendants, to adequately monitor inmate/detainee areas, including bathrooms and bunk areas, to ensure inmates/detainees are not subjected to violence at the hands of other inmates/detainees; training and requiring correctional staff, including DOES 1-10the Deputy Defendants, to intervene and/or summon assistance to prevent or stop attacks against inmates/detainees in its custody; training and requiring correctional staff, including DOES 1-10the Deputy Defendants, to provide or call for the provision of medical care to inmates/detainees in their custody who they know, or reasonably should know, are injured or are otherwise in need of urgent medical attention; and maintaining detention facilities that are adequate to maintain safety of inmates/detainees, including by not allowing overcrowding conditions and

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

maintaining proper and adequate security measures in inmate/detainee areas, and in areas for known mentally ill and/or violent inmates/detainees in particular.

103.111.    The Deputy Defendants DOES 1-10 and COUNTY breached their duty of care. The actions and inactions of the Deputy Defendants DOES 1-10 were negligent and reckless, including but not limited to, the complete failure to intervene or otherwise respond to prevent or stop the attack on Mr. Rahmati by other inmates/detainees in the bathroom despite their awareness of the attack while it was ongoing (and/or their negligent failure to monitor the bathroom area, including via the video feed, such as would have made them aware of the attack); and failure to provide or call for the provision of medical care for Mr. Rahmati for approximately three and a half hours after the attack had ended despite their awareness of the attack and Mr. Rahmati's resulting injuries and critical condition (and/or their negligent failure to monitor the bathroom area, including via the video feed, such as would have made them aware of the attack and Mr. Rahmati's resulting injuries).

104.112.    The actions and inactions of the Deputy Defendants DOES 1-10 and COUNTY were further negligent and reckless, including but not limited to, these Defendants' failure to ensure the adequate monitoring of inmate/detainee areas at all times in order to prevent reasonably foreseeable violence by, against, and among mentally ill inmates/detainees housed in extremely close quarters; COUNTY's failure to ensure adequate staffing at MCJ, including on the Fifth Floor, in order to ensure adequate monitoring and protection of inmates/detainees and to ensure timely provision of medical care to injured inmates/detainees; COUNTY's failure to ensure inmate/detainee housing areas are not overcrowded, so as to prevent or reasonably limit fights and/or other violence that is reasonably foreseeable when inmates/detainees are housed in extremely close quarters, particularly when those inmates/detainees are known by COUNTY and its staff to suffer from severe mental illnesses; COUNTY's failure to ensure inmate/detainee housing areas are not

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

overcrowded, so as to enable adequate monitoring of inmate/detainee areas in order to adequately prevent or stop violent attacks on inmates/detainees and in order to provide timely medical care to those who are injured; COUNTY's failure to adequately train jail staff, including MCJ staff, to prevent and stop violence by, against, and among inmates/detainees; and COUNTY's failure to adequately train jail staff, including MCJ staff, to provide or summon timely medical care for injured inmates/detainees. Moreover, COUNTY failed to ensure that adequate numbers of employees with appropriate education and training were available to meet the needs of and protect the rights of Mr. Rahmati.

~~105.~~113.    As a direct and proximate result of Defendants' conduct as alleged above, and other undiscovered negligent conduct, Mr. Rahmati was caused to suffer severe pain and suffering and ultimately died. Also, as a direct and proximate result of Defendants' conduct as alleged above, Plaintiff has suffered emotional distress and mental anguish. Plaintiff also has been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of Mr. Rahmati, and will continue to be so deprived for the remainder of her natural life.

~~106.~~114.    COUNTY is vicariously liable for the wrongful acts of the Deputy Defendants ~~DOES 1-10~~ pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability.

~~107.~~115.    Plaintiff brings this claim as successor-in-interest to Mr. Rahmati and in her individual capacity and seeks survival and wrongful death damages under this claim, including for Mr. Rahmati's pain and suffering, loss of life, loss of earning capacity, and loss of enjoyment of life, as well as for Plaintiff's loss of Mr. Rahmati's love, companionship, guidance, advice, and support.

## **EIGHTH CLAIM FOR RELIEF**

### **Failure to Summon Medical Care (Cal. Gov. Code § 845.6)**

### **(By Plaintiff MASOUMEH MOTEVALLI ALAMOUTI Against All Defendants)**

108.116.    Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

109.117.    Pursuant to California Government Code Section 845.6, a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the inmate or prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care.

110.118.    The Deputy Defendants DOES 1-10 were aware of Mr. Rahmati's medical emergency, in that DOES 1-10the Deputy Defendants were aware of the beating of Mr. Rahmati by other inmates/detainees both while the beating was occurring and during the three and a half hours thereafter, and were aware Mr. Rahmati was seriously injured and in urgent need of medical care. In other words, as alleged above, Mr. Rahmati's medical emergency was obvious. Defendants are not entitled to immunity where the inmate is in obvious need of medical care.

111.119.    Despite DOES 1-10'sthe Deputy Defendants' actual knowledge that Mr. Rahmati was in need of immediate medical and mental care as alleged above, these Defendants failed, for approximately three and a half hours, to (1) conduct any medical assessment of Mr. Rahmati or call for one to be conducted; (2) summon immediate emergency medical assistance for Mr. Rahmati, both during the time when he was being beaten by other inmates/detainees and thereafter; or (3) order that Mr. Rahmati be immediately transported to a hospital or other medical care facility where Mr. Rahmati could receive urgently needed treatment.

112.120.    COUNTY is vicariously liable for the wrongful acts of DOES 1-10the Deputy Defendants pursuant to Section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability. California Government Code Section 820(a) further states that except as otherwise provided by statute (including Section 820.2), a public employee is liable by his act or omission to the same extent as a private person. Pursuant to California Government Code Section 844.6, a public employee or the government entity is not immune from liability for injury proximately caused by its employee's negligent conduct, and specifies that a public entity has a duty to pay a judgment. Moreover, a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the inmate is in need of immediate medical care and he fails to take reasonable action to summon such medical care.

113.121.    As a direct and proximate result of the aforementioned conduct, Mr. Rahmati suffered injuries, including pain and suffering, and then died, losing his earning capacity. Also, as a direct and proximate cause of the acts of Defendants as alleged above, Plaintiff has suffered emotional distress and mental anguish. Plaintiff also has been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of Mr. Rahmati, and will continue to be so deprived for the remainder of her natural life.

114.122.    Plaintiff brings this claim as successor-in-interest to Mr. Rahmati and in her individual capacity and seeks survival and wrongful death damages under this claim, including for Mr. Rahmati's pain and suffering, loss of life, loss of earning capacity, and loss of enjoyment of life, as well as for Plaintiff's loss of Mr. Rahmati's love, companionship, guidance, advice, and support.

/ / /

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

## NINTH CLAIM FOR RELIEF

**Bane Act (Cal. Gov. Code § 52.1)**

**(By Plaintiff MASOUMEH MOTEVALLI ALAMOUTI Against All Defendants)**

115.123.    Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

116.124.    California Civil Code Section 52.1 ("the Bane Act"), prohibits any person from intentionally interfering with another person's constitutional rights. An intent to violate a person's constitutional rights can be shown by a reckless disregard for that person's constitutional rights.

117.125.    Here, the Deputy Defendants DOES 1-10 acted with reckless disregard for Mr. Rahmati's constitutional rights as set forth above. In particular, these Defendants had specific knowledge of the fact that Mr. Rahmati was being beaten by other inmates/detainees while the beating was occurring, and knew that it had occurred thereafter, but failed to take action to protect him or to provide him urgent medical care that he obviously needed, demonstrating reckless disregard for Mr. Rahmati's substantive due process rights.

118.126.    When the Deputy Defendants DOES 1-10 engaged in their misconduct and inactions as alleged above—including failing to intervene to stop Mr. Rahmati from being beaten and failing to provide him medical care afterward—these Defendants acted with reckless disregard for Mr. Rahmati's constitutional rights, including his constitutional rights to be protected from violence at the hands of other inmates/detainees and to timely and adequate medical attention.

119.127.    The conduct of the Deputy Defendants DOES 1-10 as alleged above was a substantial factor in causing Plaintiff's and Mr. Rahmati's harms, losses, injuries, and damages.

31

120.128.    COUNTY is vicariously liable for the wrongful acts of the Deputy DefendantsDOES 1-10 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

121.129.    The conduct of the Deputy Defendants DOES 1-10 was malicious, wanton, oppressive, and accomplished with a conscious disregard for Mr. Rahmati's and Plaintiff's rights, justifying an award of exemplary and punitive damages as to these Defendants.

122.130.    As a direct and proximate result of the aforementioned conduct, Mr. Rahmati suffered injuries, including pain and suffering, and then died, losing his earning capacity. Also, as a direct and proximate cause of the acts of the Deputy Defendants DOES 1-10 as alleged above, Plaintiff has suffered emotional distress and mental anguish. Plaintiff also has been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of Mr. Rahmati, and will continue to be so deprived for the remainder of her natural life.

123.131.    Plaintiff brings this claim as successor-in-interest to Mr. Rahmati and seeks survival under this claim, including for Mr. Rahmati's pain and suffering, loss of life, loss of earning capacity, and loss of enjoyment of life. Plaintiff also seeks reasonable costs, and funeral and burial expenses on this claim. Under the provisions of Cal. Civ. Code § 52, Defendants are also liable for reasonable attorney's fees and a civil penalty, including a multiplier.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request entry of judgment in their favor and against Defendants COUNTY OF LOS ANGELES, YVONNE PULLEN, RYAN GARCIA, BRISEIDA NOCHEZ, RENE AGUILAR ORNELAS, JOEL LEYVA, ANDREW WISE, JASON GONZALEZ, BART MARSHALL, MICHAEL MAYBEE, and OLUWASANMI OGUNJUMO and DOES 1-10, as follows:

(a) For compensatory damages and whatever other amount may be proven at trial, including both survival damages and wrongful death damages under federal and state law;

(b) For funeral and burial expenses, and loss of financial support;

(c) For pre-death pain and suffering, loss of life, and loss of enjoyment of life according to proof at trial;

(d) For punitive damages against the individual Defendants in an amount to be proven at trial;

(e) For statutory damages;

(f) For interest;

(g) For reasonable attorney's fees, including litigation expenses;

(h) For costs of suit; and

(i) For such further other relief as the Court may deem just, proper, and appropriate.


THE LAW OFFICES OF DALE K. GALIPO


Dated: April 7, 2025March 26, 2025                    By:

_____

Dale K. Galipo

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

                                     Benjamin S. Levine
                                     Attorneys for Plaintiffs

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues.

Respectfully Submitted,

THE LAW OFFICES OF DALE K. GALIPO

Dated: April 7, 2025~~March 26, 2025~~                                   By:

_____

Dale K. Galipo
Benjamin S. Levine
Attorneys for Plaintiffs

35